UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Christopher Reginald Hines, | ) C/A No.: 2:12-1890-MGL-BHH |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Report and Recommendation |
| | ) |
| Warden Drew, | ) |
| | ) |
| Respondent. | ) |

## I. <u>INTRODUCTION</u>

A Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2241 has been submitted to the Court, *pro se,* by a federal prisoner. This matter is before the Court on Respondent's Motion to Dismiss, or in the alternative, Motion for Summary Judgment (Dkt. No. 18). Pursuant to 28 U.S.C. §636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this Magistrate Judge is authorized to review posttrial petitions for relief and submit findings and recommendations to the District Court.

The Petition for Writ of Habeas Corpus was filed in this Court on July 6, 2012.[1] (Dkt. No. 1). Petitioner filed a Supplement to his Petition on August 3, 2012. (Dkt. No. 13). On November 7, 2012, the Respondent moved to Dismiss, or for Summary Judgment. (Dkt. No. 18). By Order filed November 8, 2012, pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), the Petitioner was advised of the summary judgment dismissal procedure

---

[1] Although the Petition was filed in this Court on the date noted, Petitioner has the benefit of the "mailbox" rule. <u>Houston v. Lack</u>, 487 U.S. 266 (1988)(holding prisoner's pleading is considered filed when filed with prison authorities for forwarding to the district court).

1

and the possible consequences if he failed to adequately respond to the motion. (Dkt. No. 19). On November 15, 2012, Petitioner filed a Response in Opposition to Respondent's Motion to Dismiss, and also a Motion to Expedite. (Dkt. Nos. 21, 22). On January 16, 2013, Petitioner filed a Supplement to his Response in Opposition to the Respondent's Motion to Dismiss. (Dkt. No. 23). On March 7, 2013, Petitioner filed a "Notice of Evidence of Record." (Dkt. No. 26).

Petitioner is incarcerated at FCI-Bennettsville in the State of South Carolina, a federal facility operated by the Federal Bureau of Prisons. Petitioner alleges he was convicted by guilty plea in the Western District of North Carolina of conspiracy to violate the laws of the United States in violation of 18 U.S.C. § 371 in count one of an indictment, and conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) in count eleven of the same indictment. Petitioner received a sixty (60) month sentence for count one and a one-hundred eighty-eight (188) month sentence for count eleven, to run concurrently. (Dkt. No. 1, p. 1). Petitioner alleges the savings clause found under 28 U.S.C. §2255(e) permits him to file this § 2241 action in this court attacking his federal convictions and sentences, citing, *inter alia*, United States v. Cloud, 680 F.3d 396 (4th Cir. 2012) in support. (Dkt. No. 1-1, p.3).

## II. PROCEDURAL HISTORY

Petitioner was initially charged in the Western District of North Carolina in a twelve (12) count indictment arising from an extensive mortgage fraud and money laundering scheme. (Dkt. No. 18-1, p. 4); U.S. v. Crawford, et al., Criminal Action No. 3:03-218-GCM-DSC-2 (W.D.N.C.)(Dkt. No. 3). After the government obtained a second superseding indictment, Petitioner was charged in eleven counts with two conspiracies and various

2

substantive crimes, including bank, mail, and wire fraud. (Dkt. No. 18-2, pp. 4 - 9, 12-13).

Count one charged Petitioner with conspiracy to violate the laws of the United States in violation of 18 U.S.C. §371. Specifically, Petitioner was charged with conspiring to violate 18 U.S.C. § 1014 (making a false statement and application in relation to a loan); 18 U.S.C. § 1341 (mail fraud); 18 U.S.C. § 1343 (wire fraud); and 18 U.S.C. § 1344 (bank fraud). Id. at 4-5.

Count eleven charged Petitioner with conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h), by conducting financial transactions intended to promote specified unlawful activities, i.e., mail fraud, wire fraud, and bank fraud, in violation of 18 U.S.C. § 1956(a)(1)(A)(i). Id. at 12.

The parties filed a written plea agreement on September 8, 2004 in which Petitioner agreed to plead guilty to counts one and eleven of the indictment - the two conspiracy counts. (Dkt. No. 18-3, p. 1). The plea agreement stipulated, among other things, that a factual basis exited to support the guilty pleas to both counts. (Dkt. No. 18-4). Petitioner admitted in a factual stipulation, under oath, that he knew material misrepresentations were made on real estate closing statements; that his company received proceeds as a result; and that those proceeds were used to facilitate additional financial transactions in furtherance of the charged conspiracies. Id.

A Rule 11 hearing was held before a United States Magistrate Judge on September 8, 2004. (Dkt. No. 18-5, p. 1). During the plea hearing, the Magistrate Judge described the elements of the offenses to which Petitioner was pleading guilty. Counsel for the government summarized the substance of the crimes charged. Petitioner indicated he understood the charges against him. Id. at 4-9. Government counsel also described the

potential statutory penalties Petitioner was facing for each offense, and Petitioner indicated he understood the penalties. Id. at 13-15, 19. Petitioner's factual stipulation was read, verbatim, into the record, and after a correction was made, Petitioner admitted that the stipulation was true. Id. at 10.

Petitioner also acknowledged, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B) that he understood the sentence to by imposed could be different from any estimate of sentence recommended in the plea agreement, and that if the imposed sentence was longer, he would not be permitted to withdraw his plea. Id. at 11-12. In response to the Magistrate Judge's question as to whether Petitioner was guilty of the offenses to which he was pleading guilty, the Petitioner responded in the affirmative, and told the Magistrate Judge he was pleading guilty freely, and voluntarily. Id. at 13-20.

Government counsel also recited the more significant terms of the plea agreement during the Rule 11 hearing. One of those terms was that Petitioner was waiving his right to appeal, and to challenge his conviction or sentence in a post-conviction proceeding. There were only three exceptions to this provision: (1) allegations of ineffective assistance of counsel, (2) prosecutorial misconduct, and (3) in the case of a sentencing error, limited to "an unanticipated issue ... which the District Judge finds and certifies" to require appellate review, or claims of error "that one or more findings on guideline issues were inconsistent with the explicit stipulations contained ... in the plea agreement." (Dkt. No. 18-3, p. 6). Petitioner acknowledged that counsel for the government had correctly stated the pertinent terms of his plea agreement. (Dkt. No. 18-5, p. 19).

Petitioner's counsel also stated on the record that he had reviewed the plea agreement terms with his client, and Petitioner asserted that he was "satisfied with the

4

service of [his] attorney." Id. at 20-21. The Magistrate Judge then accepted the plea, finding it to be knowing and voluntary. Id. at 22; (Dkt. No. 18-6).

On or about February 17, 2005, the U.S. Probation Officer released Petitioner's Pre-Sentence Report ("PSR"), which substantially adopted the factual stipulations contained in the plea agreement. U.S. v. Crawford, et al., Criminal Action No. 3:03-218-GCM-DSC-2 (W.D.N.C.)(Dkt. No. 83, p. 2). On March 1, 2005, Petitioner requested an "Inquiry to Status of Counsel" hearing, during which, Petitioner's attorney was allowed to withdraw, and new counsel was appointed. Id.

On March 22, 2005, Petitioner filed a Motion to Withdraw Guilty Plea with the assistance of new counsel. U.S. v. Crawford, et al., Criminal Action No. 3:03-218-GCM-DSC-2 (W.D.N.C.)(Dkt. No. 82). In his Motion, Petitioner maintained his innocence and claimed he pleaded guilty due to stress and the belief that his attorney was not adequately prepared to represent him at trial. U.S. v. Crawford, et al., Criminal Action No. 3:03-218-GCM-DSC-2 (W.D.N.C.)(Dkt. No. 82 at 2-3). Respondent opposed the Motion, citing in support the six (6) factors set forth in United States v. Moore, 931 F.2d 245, 248 (4th Cir. 1991). U.S. v. Crawford, et al., Criminal Action No. 3:03-218-GCM-DSC-2 (W.D.N.C.)(Dkt. No. 83).

On April 21, 2005, Petitioner appeared before a Magistrate Judge. The following day, the Magistrate Judge issued a Memorandum and Order, denying Petitioner's motion to withdraw his guilty plea. U.S. v. Crawford, et al., Criminal Action No. 3:03-218-GCM-DSC-2 (W.D.N.C.)(Dkt. No. 84). The Magistrate found Petitioner failed to meet his burden because he had provided testimony under oath during the plea hearing, stated he understood the charges against him and was guilty of those charges, and was satisfied with

the services of his attorney. Additionally, Petitioner had admitted his guilt in writing, and he offered no legitimate support for claiming his counsel had been ineffective. Furthermore, sending the case to trial would, at that juncture, result in substantial prejudice to the government, inconvenience the court, and waste judicial resources. Id.

Petitioner filed an objection. U.S. v. Crawford, et al., Criminal Action No. 3:03-218-GCM-DSC-2 (W.D.N.C.)(Dkt. No. 85). The District Court held a hearing, de novo. U.S. v. Crawford, et al., Criminal Action No. 3:03-218-GCM-DSC-2 (W.D.N.C.)(Dkt. No. 92). The District Court concluded that, for the reasons stated in open court at the hearing, Petitioner's motion to withdraw his guilty plea would be denied, and the Order of the Magistrate Judge would be affirmed. U.S. v. Crawford, et al., Criminal Action No. 3:03-218-GCM-DSC-2 (W.D.N.C.)(Dkt. No. 94).

A revised pre-sentence report was submitted to the court on September 23, 2005. Consistent with the plea agreement, Petitioner's base level offense was calculated at level 28 for counts one and eleven. However, it was recommended that Petitioner receive an increase of two (2) levels for violation of 18 U.S.C. §1956, and an increase of four (4) levels for Petitioner's role as an organizer and leader in the offenses. It was also recommended that the District Court deny Petitioner any credit for acceptance of responsibility, and increase his sentence by two (2) levels for the repudiation of his prior sworn statements at the Rule 11 hearing. Consequently, the PSR calculated a total offense level of 36, and criminal history category of 1. The guideline range was 188 to 235 months. (Dkt. No. 18, pp. 5-6).

Petitioner objected to the revised PSR, and attended his sentencing hearing. The District Court found that Petitioner's guilty plea was made with a full understanding of the

6

charges and possible penalties, and was entered into knowingly and voluntarily. Petitioner's objections were overruled. Petitioner received a two (2) level increase for obstruction of justice. Petitioner was sentenced to sixty (60) months for count one, and one-hundred eighty-eight (188) months for count eleven. The sentences would run concurrently. Id. at 6.

Petitioner appealed to the Fourth Circuit Court of Appeals. On April 2, 2007, the Court found that the District Court did not abuse it's discretion in denying Petitioner's motion to withdraw his guilty plea. The Court also found an adequate factual basis for the plea. U.S. v. Hines, 227 Fed. Appx. 256, 257-58, 2007 WL 1036566 (4th Cir. April 2, 2007).

On August 29, 2007, Petitioner filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255 alleging ineffective assistance of counsel, prosecutorial misconduct, and actual innocence. In the latter claim, Petitioner maintained that he did not conspire to violate the laws of the United States, and alleged the factual stipulations he signed were untrue. (Dkt. No. 18, p. 7). Petitioner's motion to vacate was denied on October 1, 2009. U.S. v. Crawford, et al., Criminal Action No. 3:03-218-GCM-DSC-2 (W.D.N.C.)(Dkt. No. 147). The Fourth Circuit affirmed the decision of the District Court on June 7, 2010. U.S. v. Crawford, et al., Criminal Action No. 3:03-218-GCM-DSC-2 (W.D.N.C.)(Dkt. No. 153).

### III. FACTUAL BACKGROUND

Petitioner and his co-conspirators devised and executed a scheme to defraud federally-insured financial institutions and private mortgage lenders by submitting falsified mortgage loan applications in the names of borrowers who had been induced to purchase real property through real estate investment offers. Petitioner and his co-conspirators obtained the fraudulent mortgage loans - which exceeded twenty-three million dollars -

7

secured by North Carolina properties with inflated values. As a consequence, at least one-hundred (100) individual buyer/borrowers, and numerous mortgage lenders throughout the United States were defrauded. Individuals with good credit scores were located and induced to "invest," using their credit information. The credit information, along with falsified information in the mortgage loan application, was used to secure inflated mortgage loans on behalf of the individuals buying the properties. Four (4) business entities, and three (3) methods - the "flip," the second mortgage scheme," and the "assignment scheme" - were created by Petitioner in furtherance of his enterprise. Petitioner utilized the services of a mortgage broker, a licensed attorney, and a certified appraiser to assist him. Petitioner and his co-conspirators used private and commercial interstate carriers to mail and to deliver false documents between closing attorneys in North Carolina, and mortgage lenders and payoff recipients. They also used interstate wire transmissions, including telephone calls, facsimile transmissions, and bank wire transfers, to carry out their schemes. (Dkt. No. 18, pp. 7-9).

## IV. <u>STANDARD OF REVIEW</u>

### *A. Motion to Dismiss*

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." <u>Republican Party of N.C. v. Martin</u>, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most

favorable to the plaintiff. <u>Mylan Labs, Inc. v. Matkari</u>, 7 F.3d 1130, 1134 (4th Cir. 1993); see also <u>Martin</u>, 980 F.2d at 952.

### B. Motion for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. <u>Anderson v. Liberty Lobby, Inc</u>., 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. <u>Id</u>. at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. <u>United States v. Diebold, Inc</u>., 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that

specific, material facts exist which give rise to a genuine issue. Id. at 324. Under this standard, the existence of a mere scintilla of evidence in support of the Petitioner's position is insufficient to withstand the summary judgment motion. Anderson, 477 U.S. at 252.

Respondent has moved to dismiss, or in the alternative moves for summary judgment. Because Respondent attached to their Motion matters that are outside of the pleadings, the Motion will be construed as a Motion for Summary Judgment.

## V. HABEAS PETITION

As noted above, Petitioner alleges in his Memorandum filed in support of his Petition that he is entitled to habeas relief based on the holding in United States v. Cloud, 680 F.3d 396 (4th Cir. 2012). (Dkt. No.1-1, p. 1). Based on this new ruling, Petitioner maintains he is "actually innocent of 'promotional money laundering' violating 18 U.S.C. § 1956(a)(1)(A)(i) in violation of 18 U.S.C. § 1956(h)." Id. Specifically, Petitioner claims the government alleged that some of the proceeds, received as profits through the "flip," were then used to make mortgage payments on behalf of the buyers and also used to make down payments on behalf of buyers that were not disclosed to the lender. Id. at 1-2. Thus, Petitioner attempts to rely on the definition of "proceeds," and their use, as it has been defined in Cloud, in support of his actual innocence argument.

Petitioner also alleges that "...at the time of the [his] first §2255 petition, an argument related to 'proceeds' as limited to 'profits' in the mortgage fraud (underline in original) context would have failed under Santos." In support of this statement Petitioner cites to, inter alia, U.S. v. Howard, 309 Fed. Appx. 760, 771, 2009 WL 205649 (4th Cir. January 29, 2009)(recognizing that Santos was limited to the unlawful activity of gambling enterprises). (Dkt No. 1-1, pp. 2-3).

10

Subsequent to defendant's first §2255 motion, which was denied on October 1, 2009, the Fourth Circuit decided United States v. Cloud, 680 F.3d 396 (4th Cir. 2012) interpreting Santos for the first time to include mortgage fraud and deeming certain transactions not to be money laundering. Id. at 3.

Petitioner also argues that the Fourth Circuit has held that proceedings that effect Constitutional Rights and fundamental fairness fall oustide the scope of a waiver in the plea agreement. (Citations omitted). Id. at 3-4.

Turning to the facts of his case, Petitioner argues that making mortgage payments on behalf of buyers was an essential expense of the enterprise, because "without the payments, there would be no buyer, and without the buyer, there would be no crime." (Dkt. No. 1-1, p. 4). Petitioner states that even though he conceded that the only transactions that were alleged to be promotional money laundering were "making money payments and making downpayments," he argues these payments were 'essential operating expenses of the business.'" Id. Thus, Petitioner argues the payments were essential expenses of operating the underlying crime. (quotations omitted). Id. at 5. Petitioner asks that his sentence for the conspiracy to commit money laundering be vacated, or, that he receive "the maximum relief that he may be entitled." Id.

Petitioner has also filed four (4) additional pleadings subsequent to the filing of his original Petition. On August 3, 2012, Petitioner filed a Supplement to his Petition for Writ of Habeas Corpus. (Dkt. No. 13). Petitioner raises two issues in his Supplement. First, "[d]id the District Court abuse its discretion in denying [D]efendant's [M]otion to [W]ithdraw [P]lea of [G]uilty," and "[d]id the District Court abuse its discretion in finding an adequate factual basis to support [D]efendant's plea of guilty." Id. at 1. On November 15, 2012, Petitioner

11

filed a Reply to Respondent's Motion to Dismiss, or in the alternative, for Summary Judgment. (Dkt. No. 21). In the Reply, Petitioner reiterates, for the most part, the arguments raised in his Petition: First, that the holding in <u>Santos</u> applies to conspiracies, and second, that "every transaction" his enterprise made was an essential expense. <u>Id</u>. at 2-3. On January 16, 2013, Petitioner filed a Supplement to his Reply, and on March 3, 2013, he filed a "Notice of Evidence on the Record." (Dkt. Nos. 23, 26). These pleadings further discuss Petitioner's arguments pertaining to the "essential expenses" of his enterprise, and the alleged "merger" of these expenses with the profits he and his co-conspirators received.

## VI. <u>DISCUSSION</u>

Generally, applications for writ of habeas corpus under 28 U.S.C. § 2241 are not used to seek relief from a federal conviction and sentence. <u>Rice v. Rivera</u>, 617 F.3d 802, 807 (4th Cir. 2010). An inmate under sentence of a federal court may properly challenge his conviction and sentence by filing a motion to vacate, set aside, or correct the sentence pursuant to 28 U.S.C. § 2255, in the court which imposed the sentence. <u>Id</u>.

In 1996, Congress significantly altered the habeas landscape by enacting the AEDPA. The statute limits an inmate to **one** challenge of his conviction and sentence under § 2255, and thus will not permit the filing of a successive § 2255 petition unless a Petitioner can show that (1) by clear and convincing new evidence ... he was not guilty of the offense, or (2) a new rule of constitutional law has been made retroactive to cases on collateral review by the Supreme Court. <u>See</u> 28 U.S.C. §2255(h). The AEDPA did not provide, however, a remedy for second or successive § 2255 motions based on intervening judicial interpretations of statutes, even though such relief had, in some cases, been available

12

under prior law. See, e.g., Davis v. U.S., 417 U.S. 333, 346-47 (1974)(holding that § 2255 is available even on nonconstitutional grounds if a new decision establishes that a prisoner was convicted "for an act that the law does not make criminal").

Petitioner has already received one round of collateral review under § 2255. As such, any second or successive challenge to his conviction and sentence is barred by § 2255(e) unless Petitioner receives prior certification from the Fourth Circuit Court of Appeals after he has established that there is newly discovered evidence showing he is not guilty of the offense, or showing that the Supreme Court has made retroactive on collateral review a new rule of constitutional law. Petitioner admits he cannot make such a showing. (Dkt. No. 1-1, p. 3).

For prisoners who are unable to meet the burden of bringing forth either newly discovered evidence or a new rule of constitutional law made retroactive by the Supreme Court, Section 2255 contains a "savings clause" which may allow for a challenge of a conviction or sentence under 28 U.S.C. § 2241 if it "appears that the remedy by motion is inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e).

The Fourth Circuit Court of Appeals set forth the test to determine if a §2255 motion would be inadequate or ineffective in In re Jones, 226 F.3d 328, 333-34 (4th Cir.2000).  The Court held that  a petitioner must show that "(1) at the time of the conviction, settled law of this circuit or the Supreme Court established the legality of the conviction; (2) subsequent to the prisoner's direct appeal and first §2255 motion, the substantive law changed such that the conduct of which the prisoner was convicted is deemed not to be criminal; and (3) the prisoner cannot satisfy the gatekeeping provisions of § 2255 because the new rule is not one of constitutional law." Jones, supra at 333-334. In this matter, Petitioner meets

13

prongs (1) and (3) of the <u>Jones</u> test. In order to determine if Petitioner has met the second prong of <u>Jones</u>, however, a further review of recent case law is required.

### A. Santos

In <u>United States v. Santos</u>, 553 U.S. 507, 128 S.Ct. 2020 (2008), Petitioner operated a lottery in Indiana that was illegal under state law. A jury found Santos guilty of one count of conspiracy to run an illegal gambling business, one count of running an illegal gambling business, one count of conspiracy to launder money (§ 1956(a)(1)(A)(i) and § 1956(h)) and two counts of money laundering ((§ 1956(a)(1)(A)(i)). The Court of Appeals affirmed the convictions and sentences. Thereafter, Santos filed a motion to vacate pursuant to 28 U.S.C. § 2255. The District Court vacated the money laundering conviction based on a Seventh Circuit opinion which held that the federal money laundering statute's prohibition of transactions involving criminal "proceeds" applied only to transactions involving criminal profits, not criminal receipts. The Court of Appeals affirmed, and the United States Supreme Court granted *certiorari*. <u>Santos</u>, 553 U.S. at 509-10. The Supreme Court held that, in order to avoid a merger of the crimes of money laundering and operating an illegal gambling business, the term "proceeds" in the money laundering statute must be construed to mean "net profits," not "gross receipts," of the illegal gambling business. <u>Id</u>. at 515-517.

### B. Halstead

Subsequently, in <u>U.S. v. Halstead</u>, 634 F.3d 270 (4th Cir. 2011) - a money laundering and health care fraud case - the Fourth Circuit held that the ruling in <u>Santos</u> applied retroactively to cases on collateral review. The Court said:

> "When the Supreme Court issues new rulings in criminal cases, substantive rules generally apply retroactively, while procedural rules do not. (citations omitted). "A rule is substantive rather than procedural if it alters the range of

14

conduct or the class of persons that the law punishes," (citations omitted), and 'rules' include 'decisions that narrow the scope of a criminal statute by interpreting its terms,' (citations omitted).

In [Santos], the Court did narrow the scope of the money laundering statute by interpreting the term "proceeds" in § 1956(a)(1) to mean the "net profits" of an illegal gambling business rather than its "gross receipts." Accordingly, we hold that [Santos] applies retroactively on collateral review."

Halstead, 634 F.3d at 274.

In Halstead, the Fourth Circuit also noted that, because Santos was decided by a

4-1-4 vote, its holding had been the subject of much debate. After a lengthy analysis of the

Santos decision, the Fourth Circuit, applied the standard set out in Marks v. United States,

430 U.S. 188, 97 S.Ct. 990 (1977). In Marks, the Supreme Court stated:

"When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.'"

Marks, 430 U.S. at 193.

Utilizing the standard set out in Marks, the Fourth Circuit in Halstead read Santos

to hold that:

"...when a merger problem arises in the context of money laundering and illegal gambling, the required (emphasis in original) solution is to define the proceeds of the illegal gambling business as its net profits. When, however, a merger problem arises in the context of money laundering and an illegal activity other than illegal gambling, because of Justice Stevens' opinion that would require addressing that situation on a case-by-case approach, we will leave further development of a solution to a future case that presents the problem."

Halstead, 634 F.3d at 279.

Thus, applying the foregoing to the facts in Halstead, the Fourth Circuit held: "[a]s

we demonstrate below, the merger problem does not arise in this case, and we need not

15

address the appropriate solution to a case involving money laundering and healthcare

fraud." Id. "[W]hen the financial transactions of the predicate offense are different from the

transactions prosecuted as money laundering, the merger problem recognized in [Santos]

does not even arise. That is the case here." Id. at 279-280. The Court explained as follows:

> "At the moment that the healthcare provider paid money to Priority One, the crime of healthcare fraud was complete, and the money that the healthcare provider paid to Priority One was the 'proceeds' of the healthcare fraud."

Id. at 280.

> "After Priority One fraudulently obtained money from the healthcare providers, Halstead directed that the money be transferred from Priority One to West Virginia Medical Corporation, a company created to manage Priority One. He also directed that the money be further transferred from West Virginia Medical Corporation to Burns and himself, in his case through his company, Practice Systems. These transfers constituted the 'transactions' of money laundering, ..."

Id.

> "The healthcare fraud charges were defined by the obtaining of money from the fraudulent billing of healthcare providers, while the money laundering charge was defined by transferring the proceeds thereafter."

Id. at 280-81.

Consequently, the Fourth Circuit ruled that the merger problem did not arise in the

circumstances of the case, and therefore the holding in Santos did not provide Halstead

any relief. Id. at 281.

### C. Cloud

The ruling in Halstead was followed by the Fourth Circuit opinion in U.S. v. Cloud,

680 F.3d 396 (4th Cir. 2012). Cloud was convicted of one (1) count of mortgage fraud

conspiracy, three (3) counts of mail fraud, thirteen (13) counts of bank fraud, one (1) count

of money laundering conspiracy, and six (6) counts of money laundering. The convictions

stemmed from his leadership of a mortgage-fraud conspiracy. The scheme involved multiple co-conspirators, including two mortgage brokers, two attorneys, an appraiser, a bank insider, and Cloud's wife. Cloud recruited various individuals with good credit to purchase various properties, with no money down. He offered to assist the buyers with rent or mortgage payments, and repairs. He also claimed he would eventually sell the properties and split the profit. Instead, Cloud bought the properties first, and "flipped" the property to the buyer. He arranged for buyers to purchase multiple properties within a short time frame, to prevent earlier sales from appearing on their credit reports, and he falsified loan applications. Rental income was not used to pay the mortgages, and many homes went into foreclosure. Some buyers who trusted Cloud signed documents without reviewing them, however, Cloud also forged some buyer's signatures. Cloud provided cashier's checks, which falsely indicated the buyers were providing the down payment, to closing attorneys. Cloud paid kickbacks to buyers, to at least one mortgage broker, and to recruiters. These payments were not disclosed on the HUD-1 form. Cloud, 680 F.3d at 399-400.

A jury convicted Cloud on all charges except one (1) money laundering count. Subsequently, Cloud moved for a judgment of acquittal on his money laundering convictions based on the holding in Santos, supra. The District Court denied his motion, based on the holding in U.S. v. Howard, 309 Fed. Appx. 760 (4th Cir. 2009)(unpublished) which limited Santos to illegal-gambling offenses. Cloud was sentenced and timely appealed. Id. at 400-401.

Cloud raised several grounds on appeal. In one of those grounds, Cloud argued that the District Court erred in failing to grant his Rule 29 motions, made at the close of the

17

government's case, and again before the case was submitted to the jury. Id. at 403. Specifically, he argued that "the government failed to prove counts 27-33 of the indictment, which charged him with money laundering ... and money laundering conspiracy ... by (1) failing to show that the transactions involved the profits of unlawful activity as required by [Santos], and (2) offering insufficient evidence." Id. The Court found that Cloud's money laundering convictions (counts 28-33) suffered from a merger problem, insofar as they charged the payment of the "essential expenses" of the fraud. Because the Court reversed those convictions based on Santos and Halstead, they did not reach Cloud's argument pertaining to the sufficiency of the evidence.

However, the Court affirmed Cloud's money laundering conspiracy conviction (count 27), "finding no merger problem and sufficient evidence." Id. In reviewing count 27, the Court found that "the conspiracy charge was not tied to any specific payment to a recruiter, buyer, or coconspirator." Cloud, 680 F. 3d at 408.

### D. The Arguments

In light of the foregoing, the Respondent in the above-captioned matter argues that (1) the Petition should be denied because Petitioner waived his right to challenge his conviction in any post-conviction proceeding, except on issues not asserted in his original Petition; and (2) even if Petitioner did not waive his right to challenge the money laundering conspiracy conviction pursuant to the plea agreement, his Petition should be denied on the merits.

1. Waiver of the plea agreement

Petitioner argues he is actually innocent of the money-laundering conspiracy offense. Respondent argues that, in exchange for concessions made by the United States,

18

Petitioner waived his right to challenge either his convictions or his sentence through any post-conviction procedure. There were three exceptions: (a) ineffective assistance of counsel, (b) prosecutorial misconduct, and (c) in the case of a sentencing error, limited to "an unanticipated issue ... which the District Judge finds and certifies" to require appellate review, or claims of error "that one or more findings on guideline issues were inconsistent with the explicit stipulations contained ... in the plea agreement." (Dkt. No. 18-3, p. 6). Respondent argues the plea agreement should be enforced, citing United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005)(recognizing the enforceability of plea-agreement waivers of the right to challenge a conviction or sentence, directly, or collaterally).

As noted above, Petitioner argues that "the Fourth Circuit has held that proceedings that effect Constitutional Rights and fundamental fairness fall outside the scope of a waiver in the plea agreement." (Dkt. No. 1-1, p. 3). Petitioner cites to two cases, United States v. Marin, 961 F.2d 493, 496 (4th Cir. 1992) and U.S. v. Broughton-Jones, 71 F.3d 1143, 1147 (4th Cir. 1995) in support. Petitioner's reliance on these two cases, however, is misplaced.

For example, Petitioner claims that the Court in Broughton-Jones held that "challenges to the validity of sentence fall outside the scope of an appeal waiver where the challenge involves a claim that sentence was illegal." The Court in Broughton-Jones, however, vacated a restitution order, finding it illegal because "a court's order to order restitution is statutory in origin, [and] a defendant's consent to a particular restitution order cannot, without more, authorize a restitution order not authorized by the statutory source." Broughton-Jones, 71 F.3d at 1149.

Petitioner also claims that the Court in Marin held that a "sentence imposed in

excess of maximum provided by statute or based on Constitutionally impermissible factor like race falls outside the scope of an appeal waiver." The <u>Marin</u> court ruled, however, that "'[t]he plea agreement and the circumstances surrounding its adoption [were] wholly sufficient to establish that' Marin knowingly and voluntarily waived his right to appeal." (citation omitted). <u>Marin</u> 961 F.2d at 496.

Petitioner further argues that he may raise claims he "'could not have reasonably contemplated' at the time of the plea agreement[,]"... "even if that waiver was knowing and voluntary." (Dkt. No. 1-1, p. 4). He cites to <u>United States v. Blick</u>, 408 F.3d 162, 172 (4th Cir. 2005), and <u>United States v. Yancey</u>, 463 Fed. Appx. 202, 203, n.1, 2012 WL 313752 (4th Cir. February 2, 2012)(unpublished) in support.

The <u>Blick</u> court, referring to the decisions in <u>Marin</u> and <u>Broughton-Jones</u> said:

> "Notwithstanding some rather broad language in those opinions, we do not believe that the actual holdings of those cases compel the conclusion that Blick's arguments must be considered outside the scope of his appeal waiver, and we decline to extend those holdings in this case."

<u>Blick</u>, 408 F.3d at 172.

The Court noted that Blick's situation was different because

> "at the time he entered the plea agreement, both Blick and the United States expressly contemplated and agreed that he would be sentenced in exactly the manner in which he was, in fact, sentenced: ... [a]lthough the law changed after Blick pled guilty, his expectations (as reflected in the plea agreement) did not."

<u>Id</u>.

This is also true of Petitioner's situation, and Petitioner has failed to make any showing to the contrary.

In <u>Yancey</u>, the government agreed at sentencing that Yancey could appeal his

career offender classification. Thus, Yancey's appellate waiver did not bar his claim that he was improperly classified as a career offender. <u>Yancey</u>, 463 Fed. Appx. at 203. In the above-captioned matter, however, Petitioner has made no showing that his arguments fall into one of the three categories that were exceptions to his plea agreement.

Based on the foregoing then, Petitioner has not established that his sentence was illegal or that the issues presented in his original Petition fall into one of the three exceptions to the waiver provision contained in the plea agreement. His plea agreement should be enforced.

2. <u>Money Laundering Conspiracy</u>

As set out above, Petitioner claims the government alleged that some of the proceeds, received as profits through the "flip," were then used to make mortgage payments on behalf of the buyers and also used to make down payments on behalf of buyers that were not disclosed to the lender. (Dkt No. 1-1, p. 1). Thus, Petitioner attempts to rely on the definition of "proceeds," and their use, as it has been defined in <u>Cloud</u>, in support of his actual innocence argument.

Petitioner also alleges that "...at the time of the [his] first §2255 petition, an argument related to 'proceeds' as limited to 'profits' in the <u>mortgage fraud</u> (underline in original) context would have failed under <u>Santos</u>." In support of this statement Petitioner cites to, among others, <u>U.S. v. Howard</u>, 309 Fed. Appx. 760, 771, 2009 WL 205649 (4th Cir. January 29, 2009)(recognizing that <u>Santos</u> was limited to the unlawful activity of gambling enterprises). (Dkt No. 1-1, pp. 2-3).

Subsequent to defendant's first §2255 motion, which was denied on October 1, 2009, the Fourth Circuit decided <u>United States v. Cloud</u>, 680 F.3d 396 (4th Cir. 2012)

21

interpreting <u>Santos</u> for the first time to include mortgage fraud and deeming certain transactions not to be money laundering. <u>Id</u>. at 3.

Consequently, based on the holdings in <u>Cloud</u>, and in <u>Santos</u>, Petitioner believes he is actually innocent and therefore eligible to use the savings clause to bring a legal challenge under § 2241.

Respondent counters that, as an initial matter, the issues Petitioner raises are properly brought in a motion to vacate, not a Petition filed pursuant to 28 U.S.C. § 2241. Furthermore, Respondent argues that Petitioner has previously filed a motion to vacate and may not circumvent the statutory restrictions on filing a successive Section 2255 motion, unless Petitioner has sought, and received, permission from the appropriate Court of Appeals after meeting the narrow circumstances set out in 28 U.S.C. §2255(h).

Respondent acknowledges that where Section 2255 is inadequate or ineffective to test the legal validity of a conviction or detention, the "savings clause" of Section 2255(e) may permit a federal prisoner to seek relief pursuant to Section 2241. Respondent notes that the Fourth Circuit reversed the defendant's substantive money laundering convictions in <u>Cloud</u>, based on the decision in <u>Santos</u> due to a merger problem, which may occur when the illegal activity includes money transactions to pay for the cost of the illegal activity and the government uses those transactions to prosecuted the defendant for money laundering. <u>Santos</u>, 553 U.S. at 516-17. Nonetheless, Respondent argues that the Fourth Circuit made clear in <u>Cloud</u> that <u>Santos</u> does not apply to conspiracy offenses because conspiracy offenses do not rely on specific transactions that are the cause of a merger problem. (Dkt. No. 18, p. 14).

The Fourth Circuit did not apply the decision in <u>Santos</u> to Cloud's conspiracy charge

because the conspiracy charge was not tied to any specific payment to a recruiter, buyer, or coconspirator, and the evidence established that the defendant used the profits from previous "flips" to finance additional purchases. Consequently, Cloud was not paying the essential expenses for the underlying crime. Cloud, 680 F.3d at 408.

The Petitioner has made only a bald assertion that some of the proceeds, received as profits through the "flip," were used to make mortgage payments on behalf of the buyers and also used to make down payments on behalf of buyers that were not disclosed to the lender. This, standing alone, is insufficient to establish that proceeds from his scheme were used to pay the essential expenses of his enterprise.

3. Petitioner's additional pleadings

Petitioner's additional pleadings, submitted after he filed his original Petition, do not help him. In his Response in Opposition to Respondent's Motion to Dismiss (Dkt. No. 21), the Supplement to his Response (Dkt. No. 23), and his Notice of Evidence of Record (Dkt. No. 26), Petitioner essentially argues that Santos applies to conspiracies. He also claims that "every transaction" in his case was an "essential expense," subject to the merger issue. As set out above however, Santos does not apply to money laundering conspiracies where the charge was not tied to any specific payment to a recruiter, buyer, or coconspirator.

As for the claims raised in Petitioner's Supplement to his Petition (Dkt. No. 13), Petitioner raises two issues. First, Petitioner alleges the District Court abused its discretion in denying Defendant's motion to withdraw his plea of guilty. Second, Petitioner alleges that the District Court abused its discretion in finding an adequate factual basis to support his plea of guilty.

These issues are not properly raised in a Section 2241 petition. Petitioner must first

establish that a Section 2255 motion would be inadequate or ineffective to address them, which he can not do. This is because Petitioner has already raised these claims, at all levels of review, as was fully set out above in the procedural history of this matter. Notably, if a prisoner's § 2255 motion is denied by a sentencing court, the denial itself is not sufficient to demonstrate that the § 2255 motion was inadequate, or ineffective. Williams v. United States, 323 F.2d 672, 673 (10th Cir. 1963). Because Petitioner can not establish that a motion to vacate would be inadequate or ineffective, he may not file a Section 2241 petition to address these claims.

Petitioner has failed to establish that proceeds from his scheme were used to pay the essential expenses of his illegal enterprise. Therefore, Petitioner is unable to show that there has been a substantive change in the law which applies to his conviction in accordance with prong two of the Jones test. Even if Petitioner could establish the same however, he has failed to show that he meets an exception to the waiver in the plea agreement.

## VII. <u>CONCLUSION</u>

Wherefore, it is RECOMMENDED that the Respondent's Motion (Dkt. No. 18) construed herein as one for Summary Judgment be GRANTED and the Petitioner's Petition be DISMISSED WITH PREJUDICE. It is further recommended that Petitioner's Motion to Expedite (Dkt. No. 22) be terminated as MOOT.


s/Bruce H. Hendricks
United States Magistrate Judge

July 17, 2013
Charleston, South Carolina


***<u>The Petitioner's attention is directed to the important NOTICE on the next page.</u>***

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).


Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402


**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).